# Attachment A

*Duckworth v. Peoria Speakeasy, Inc. (In re Duckworth)*


Slip Copy, 2013 WL 1397456 (Bkrtcy.C.D.Ill.)
**(Cite as: 2013 WL 1397456 (Bkrtcy.C.D.Ill.))**

H
Only the Westlaw citation is currently available.

United States Bankruptcy Court,
C.D. Illinois.
In re David L. DUCKWORTH, Debtor.
Charles E. Covey, Trustee, Plaintiff,
v.
Peoria Speakeasy, Inc., d/b/a Big Al's Speakeasy,
Defendant.

Bankruptcy No. 10–83603.
Adversary No. 11–8092.
Nos. 10–83603, ADV 11–8092.
April 5, 2013.

Andrew W. Covey, Peoria, IL, for Plaintiff.

Samuel Benjamin Zabek, Graves Law Offices, P.C.,
Peoria, IL, for Defendant.

*OPINION*
THOMAS L. PERKINS, United States Bankruptcy
Judge.

***1** This matter is before the Court on cross motions for summary judgment filed by Charles E. Covey, Trustee (TRUSTEE), as Plaintiff and Peoria Speakeasy, Inc., d/b/a Big Al's Speakeasy (SPEAKEASY), as Defendant, on the TRUSTEE'S complaint to recover payments totaling $6,270.25, as postpetition transfers under section 549 of the Bankruptcy Code.

**BACKGROUND**

The facts are not controverted. The Debtor, David L. Duckworth (DEBTOR), a self-employed grain farmer, filed a Chapter 7 petition on November 23, 2010. According to the schedules of assets and liabilities which were filed on November 29, 2010, the DEBTOR held no interest in any incorporated or unincorporated business, partnership or joint venture. He reported cash on hand and in a checking account in the total amount of $400. He scheduled crops worth $363,158 and farm equip-

ment valued at $323,000.

State Bank of Toulon (SBT) is scheduled as a secured creditor on Schedule D filed by the DEBTOR, which lists debts owed to SBT totaling $2,340,249 secured by collateral valued at $686,158. The DEBTOR also scheduled several farm ground landlords as secured creditors, holding rights in crops. In its motion for relief from stay, SBT alleges that as of the filing date it was owed $2,329,226 and that the DEBTOR had no equity in the collateral, which included farm equipment and farm products (crops), and the proceeds therefrom. Michlig AgriCenter, Inc. and/or Michlig AgriCenter Grain, L.L.C. (together "MICHLIG"), also asserted rights to the crops. The first meeting of creditors was held on December 29, 2010. At that meeting, the DEBTOR falsely denied that he was the principal of Power Trading, LLC, and that he had a bank account in that name.

On August 10, 2011, the DEBTOR pled guilty to money laundering and bankruptcy fraud, admitting that, beginning in February 2009, he sold grain out of trust, contracting to sell corn under the names of Lighthouse Farms, Inc., and Midwest Farms, LLC, having established those entities for the purpose of selling the grain free of the lien of secured creditors. The DEBTOR acknowledged that he established bank accounts in the names of each of those entities and deposited grain proceeds into those accounts without SBT's knowledge or consent. On November 7, 2010, the DEBTOR formed Power Trading, LLC as an Indiana limited liability company. On November 12, 2010, the DEBTOR withdrew funds totaling $97,000 from the Lighthouse Farms and Midwest Farms accounts. On November 22, 2010, just one day prior to filing his bankruptcy petition, the DEBTOR deposited $95,000 into an account he had opened days earlier in the name of Power Trading. On January 24, 2011, the DEBTOR established a second account in the name of Power Trading, funding the account with withdrawals totaling $24,000 from the existing

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

account in the name of Power Trading.

After those facts came to light, the TRUSTEE filed an adversary proceeding to deny the DEBTOR'S discharge and for a money judgment for the value of the assets not disclosed. The TRUSTEE and the DEBTOR entered into a stipulated judgment for denial of the DEBTOR'S discharge and awarding judgment in the TRUSTEE'S favor for $99,816.25, plus costs of $250.[FN1] In that judgment, the DEBTOR admitted the underlying elements of sections 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(6), and agreed that, on the date of bankruptcy, he "owned" $94,900 in an account in the name of Power Trading, LLC.[FN2]

> FN1. The complaint in Adv. No. 11–8058 was filed on July 11, 2011. The stipulated order was entered on September 19, 2011. The DEBTOR was represented by an attorney.

> FN2. The DEBTOR also admitted to being the owner of an account in the name of Midwest Farms, LLC, which had a balance as of the filing of $1,416.25 and a 2008 Kawasaki Vulcan Classic 900 motorcycle, which he sold after the filing of the petition for $3,500.

**\*2** SBT brought an adversary proceeding, Adv. No. 11–8002, against the TRUSTEE and various creditors, claiming liens against the DEBTOR'S property, seeking a determination of the validity, priority and extent of its claimed liens. The TRUSTEE asserted counterclaims and crossclaims, seeking, *inter alia,* a determination that SBT's security interest was not valid, or alternatively, was avoidable, and in addition, to avoid each of the landlord's liens on crops. In that adversary, this Court has determined that SBT had a valid, unavoidable lien on crops that secured a promissory note dated December 15, 2008, in the principal amount of $1,100,000. *In re Duckworth,* 2012 WL 986766 (Bankr.C.D.Ill.2012). The appeals from that decision were dismissed, based on the district

court's determination that this Court's order was not an appealable final order and that an interlocutory appeal was not appropriate, given the related and overlapping claims which this Court had not yet addressed.[FN3]

> FN3. Appeals were taken by the TRUSTEE, SBT, Michlig AgriCenter Grain, LLC and Michlig AgriCenter, Inc.

Among the pending matters referred to by the district court, apart from the unresolved issues in SBT's first adversary proceeding, was a second adversary proceeding, Adv. No. 11–8037, brought by SBT against the TRUSTEE to determine the validity of its lien in excess equipment proceeds remaining after satisfaction of its loans securing purchase money security interests in the equipment. This Court recently issued its decision in that proceeding, again interpreting SBT's documents and reaffirming its earlier ruling that SBT's security agreement dated December 13, 2008, secured the $1.1M Note dated December 15, 2008, despite the misidentification of the date of the note in the security agreement. *In re Duckworth,* 2013 WL 211231 (Bank.C.D.Ill.2013). The TRUSTEE has appealed that decision.

The TRUSTEE brought this adversary against SPEAKEASY, an establishment featuring live adult entertainment, seeking to avoid a series of transfers it received during the period from December 30, 2010 to February 7, 2011, from the accounts in the name of Power Trading as unauthorized postpetition transfers pursuant to section 549 and to recover the value of those transfers under section 550(a)(1). Attached to the complaint is a copy of the checking account statements for the two accounts of Power Trading reflecting the $95,000 deposit made on November 22, 2010. Those statements reflect that between November 23, 2010, and March 18, 2011, four hundred and sixty transactions were debited to the accounts, expending virtually the entire initial deposit of $95,000. Funds totaling $6,270.25 were paid to SPEAKEASY.[FN4] SPEAKEASY answered the complaint, denying that any of the funds it re-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

ceived were transfers of property of the bankruptcy estate. Both the TRUSTEE and SPEAKEASY filed motions for summary judgment, which are presently before the Court.

> FN4. Purchases were made as follows: December 29, 2010–$89.75; January 13, 2011–$517.50; January 16, 2011–$1,708.75; January 20, 2011–$1,837.00; January 29, 2011–$541.50; January 29, 2011–$106.25; February 4, 2011–$196.00; and February 20, 2011–$1,273.50.

**ANALYSIS**

Under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the material facts are not in dispute, the sole issue is whether the moving party is entitled to a judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Broth. of Teamsters, Local 710,* 153 F.3d 774, 777 (7th Cir.1998).

**\*3** The TRUSTEE argues that the alter ego doctrine requires that the separate existence of the three nondebtor entities be disregarded. Although the TRUSTEE does not expressly rely upon section 105(a)'s grant of general equitable powers to bankruptcy courts, his reliance upon the equitable alter ego doctrine triggers the same concerns. It is well established that a bankruptcy court's equity powers are cabined by the Bankruptcy Code's explicit provisions. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 198, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). A bankruptcy court may not use its equitable powers to circumvent the law. *Matter of Greenig,* 152 F.3d 631, 635 (7th Cir.1998). The power conferred by section 105(a) is one to imple-

ment rather than to override. *In re Kmart Corp.,* 359 F.3d 866, 871 (7th Cir.2004). When a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code or to expand or contract a right explicitly granted. *Matter of Fesco Plastics Corp.,* 996 F.2d 152, 154–55 (7th Cir.1993); *In re Ludlow Hosp. Soc'y, Inc.,* 124 F.3d 22, 28 (1st Cir.1997). This Court sees no reason why these principles should not apply here.

**Sections 549 and 550**

Section 549 authorizes a trustee to avoid an unauthorized, postpetition transfer of property of the estate. 11 U.S.C. § 549(a). An action to avoid a transfer has four elements: (1) property was transferred; (2) the property was property of the bankruptcy estate; (3) the transfer occurred after the commencement of the case; and (4) the transfer was not authorized by the bankruptcy court or the Bankruptcy Code. *In re Blair,* 330 B.R. 206 (Bankr.N.D.Ill.2005). The Bankruptcy Code does not set forth rules for determining whether a debtor has an ownership interest in property, so ownership is determined by applicable nonbankruptcy law, typically state property law. *Grede v. FCStone, LLC,* 485 B.R. 854, 868 (N.D.Ill.2013). Once the trustee establishes that a postpetition transfer of estate property occurred, the burden shifts to the defendant to prove the validity of the transfer. Fed. R. Bankr.P. 6001; *In re Rood,* 459 B.R. 581, 606 (Bankr.D.Md.2011). Since the funds paid to SPEAKEASY came from Power Trading's account, whether the transferred funds were property of the estate is a disputed issue.

Section 550 of the Bankruptcy Code governs the liability of transferees and beneficiaries of avoided transfers. Under section 550(a)(1), an avoided transfer can be recovered from the "initial transferee." Under section 550(a)(2), the transfer is also recoverable from an "immediate or mediate" transferee of the initial transferee. Under that provision, however, a subsequent transferee who takes a transfer for value, in good faith, and without know-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 1397456 (Bkrtcy.C.D.Ill.)
**(Cite as: 2013 WL 1397456 (Bkrtcy.C.D.Ill.))**

ledge of its voidability, is shielded from liability. Neither the initial transferee nor the entity for whose benefit the transfer was made is protected by the good faith defense to liability. *In re Baker & Getty Fin. Serv., Inc.,* 974 F.2d 712, 722 (6th Cir.1992). So a trustee has greater rights against an initial transferee than he does against a subsequent transferee. In an effort to take advantage of this distinction, the TRUSTEE attempts to characterize SPEAKEASY as an initial transferee even though the chain of transfers indicates SPEAKEASY is a subsequent transferee.

**\*4** The TRUSTEE concedes that Lighthouse Farms, Midwest Farms and Power Trading were properly created and validly existing entities under state law. He concedes that before bankruptcy, each entity had one or more bank accounts opened in its name. He concedes that before bankruptcy the DEBTOR sold grain and deposited the proceeds first in the Lighthouse Farms and Midwest Farms accounts and later transferred the funds to the Power Trading accounts. He concedes that the challenged transfers to SPEAKEASY were all made out of the Power Trading accounts. Finally, he concedes that SPEAKEASY gave adequate value for each transfer, in good faith, and without knowledge of voidability.

On the face of those conceded facts, the TRUSTEE'S cause of action should fail because the transferred funds, on deposit in Power Trading's account before bankruptcy, were not property of the estate and because SPEAKEASY was a subsequent (not initial) transferee protected by the good faith defense. Recognizing these inconvenient facts, the TRUSTEE reprises the alter ego theory that he previously put forth in a similar avoidance action against Casey's General Stores (Casey's) in Adversary No. 11–8104, which this Court rejected. *In re Duckworth,* 2012 WL 4434681 (Bankr.C.D.Ill.2012)(decided Sept. 24, 2012).

**The Prior Decision in *Casey's***

In his motion for summary judgment in that case, the TRUSTEE asserted that Lighthouse

Farms, Inc., Midwest Farms, LLC, and Power Trading, LLC, were alter ego entities of the DEBTOR whose separate status should be disregarded as a matter of Illinois law. Disregarding those separate entities and treating their assets as if owned by the DEBTOR, the TRUSTEE maintained that the funds in Power Trading's account were property of the DEBTOR'S bankruptcy estate at the time he filed his petition and remained so thereafter. In support of his motion, the TRUSTEE presented a portion of the DEBTOR'S deposition, a copy of his plea agreement and a transcript of his criminal guilty plea hearing in federal district court. In his deposition, the DEBTOR admitted that he had full dominion and control over the funds transferred to the Power Trading accounts and that the funds were spent on his personal living expenses. Also submitted by the TRUSTEE was a letter written by Michael Clark, as Trustee of TDA Concepts, a member of Power Trading, LLC, stating that Power Trading was not a business entity and that it was created for the "purpose of providing asset privacy and protection" of the personal property owned by the DEBTOR, along with various documents papering the trail of the grain proceeds from the elevator through the bank accounts held by the nondebtor entities to Casey's. The TRUSTEE did not dispute that each Casey's transaction represented an ordinary retail sale of consumer goods. Nor did he dispute Casey's assertions that neither it nor any of its employees were aware of the DEBTOR'S bankruptcy filing and that it provided equivalent value in exchange for the transfers.

**\*5** Like SPEAKEASY here, Casey's also filed a motion for summary judgment which disputed the TRUSTEE'S alter ego theory. Casey's asserted that Power Trading was the initial transferee of the funds from the DEBTOR, and that as a subsequent transferee, it took the funds in good faith and without knowledge of the avoidability of the transfers, and was protected under section 550(b)(1).

This Court issued its decision in favor of Casey's on September 24, 2012, rejecting the TRUST-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

EE'S application of the alter ego theory. Finding that ownership of the funds was validly transferred prepetition to the non-debtor entities created for that purpose, the Court determined that the funds held in Power Trading's account on the date of bankruptcy were the property of Power Trading, not the DEBTOR, so that they did not become property of the estate. Notwithstanding the fraudulent nature of the DEBTOR'S transfers of funds to those entities, a determination not seriously contested in any of these proceedings, each entity was properly created, validity existing, and capable of owning property, including bank accounts. The Court turned to Indiana law, which governed the issue of the application of the doctrine of alter ego, recognizing that Indiana courts, like those of most states, were reluctant to disregard a corporate entity, applying the doctrine only to avoid an injustice. Rather than prevent an injustice, this Court concluded that holding Casey's liable for the fraud perpetrated by the DEBTOR would in fact result in an injustice to Casey's, an innocent party.

The Court further determined that the good faith defense provided to a subsequent transferee, not available to an initial transferee, must necessarily be applied based on the chain of transfers as they occurred as a matter of fact among the validly created and existing entities. This plainly follows from the fact that Congress tied the good faith transferee defense to a party's status as a mediate transferee, i.e., one who received a transfer from someone other than the debtor. Using a so-called equitable doctrine to disregard a chain of transfers and thereby deprive a good faith transferee of a statutorily mandated defense contradicts the plain meaning of section 550. Equitable remedies are not permitted to overrule statutory rights. *Douglas v. Indep. Living Ctr. of S. Cal., Inc.,* —— U.S. ——, 132 S.Ct. 1204, 1213, 182 L.Ed.2d 101 (2012); *Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71, 37 L.Ed. 1044 (1893); *In re United Airlines, Inc.,* 438 F.3d 720, 737 (7th Cir.2006). In the very context of Bankruptcy Code section 550, the Seventh Circuit has expressed serious doubts about

the propriety of a bankruptcy court declining to enforce the statute's liability scheme for reasons of equity. *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 894–95 (7th Cir.1988)(Easterbrook, J.). Summary judgment was entered in favor of Casey's and against the TRUSTEE. The TRUSTEE did not appeal the Court's decision.[FN5]

> FN5. Before deciding the case on that basis, the Court noted an oversight by the TRUSTEE. The Court observed that the TRUSTEE'S theory ignored the fact that the funds transferred by the DEBTOR were fully encumbered by landlord liens and the security interests of SBT and MICHLIG. But this issue played no role in the Court's decision in *Casey's* and plays no role in its decision today.

### The Court's Reasoning in Casey's Applies Here

**\*6** Turning to the motions presently before the Court, the TRUSTEE, conceding that the facts do not differ in any material way from those before the Court in the previous proceeding involving Casey's, asks this Court to reconsider its analysis in the prior ruling. The TRUSTEE's theory is the same. The controlling law remains unchanged. With one exception, the only difference is in the outcome sought by the TRUSTEE.

Apart from the new argument relating to the lien releases, which is discussed below, the TRUSTEE'S motion for summary judgment largely repeats the arguments he made in *Casey's,* that Lighthouse Farms, Midwest Farms and Power Trading were the alter egos of the DEBTOR, so that the payments made to SPEAKEASY by Power Trading may be treated as if they were made directly by the DEBTOR and are recoverable from SPEAKEASY as if it was an initial transferee. The TRUSTEE'S reliance on the alter ego doctrine in this context is unprecedented. The TRUSTEE is not asserting what has become recognized by some bankruptcy courts as a permissible use of the alter ego doctrine, akin to substantive consolidation, in order to combine the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

assets in the possession of Power Trading and its liabilities, along with those of the DEBTOR, to be administered as part of the DEBTOR'S bankruptcy estate. *See In re Cyberco Holdings, Inc.,* 431 B.R. 404 (Bankr.W.D.Mich.2010). Rather, the TRUSTEE is seeking to apply the alter ego doctrine to disregard the transfers from the DEBTOR to Lighthouse Farms and to Midwest Farms, and from those entities to Power Trading, in order to deny SPEAKEASY the statutory good faith transferee defense specifically provided by section 550(b)(1) of the Bankruptcy Code. According to the TRUSTEE, the only issue to be decided is whether, on the date the DEBTOR'S petition was filed, the separate corporate existence of Power Trading should be disregarded, based on an application of the general factors commonly regarded in determining whether to pierce the corporate veil, such as intermingling of assets and business activity, failure to observe corporate formalities, pervasive control, and the use of the corporation to promote fraud. Should he prevail on that issue, the TRUSTEE maintains that the funds in the Power Trading account on the date of bankruptcy are property of the DEBTOR'S bankruptcy estate and pursuant to section 549, he is authorized to avoid any and all postpetition transfers.

Upon reconsideration of the TRUSTEE'S arguments and its earlier opinion in *Casey's,* the Court reaffirms its reasoning and adopts and incorporates it here. [FN6] Without repeating the entire opinion, several points are worth expanding upon and emphasizing.

> FN6. This Court's opinion in *Casey's* will be docketed in this Adv. No. 11–8092, in conjunction with the issuance of the instant Opinion.

## DEBTOR Held Neither Legal nor Equitable Title to the Funds

As discussed above, section 549 applies only to transfers of property of the estate. All legal and equitable interests of the debtor in property at the time the bankruptcy petition is filed become property of the estate. 11 U.S.C. § 541(a)(1). As the

grain proceeds were transferred to and among the non-debtor entities prepetition and were on deposit in Power Trading's account on the petition date, the DEBTOR did not hold legal title to the funds and they did not become property of the estate by operation of section 541. The theory that a debtor holds an "equitable" interest in fraudulently transferred property for purposes of section 541 has been thoroughly debunked. The clear majority rule, with which this Court agrees, is that fraudulently transferred property is not property of the estate until and unless the transfer is avoided and the property itself is recovered. *Rajala v. Gardner,* 709 F.3d 1031, 2013 WL 924455 (10th Cir.2013); *Federal Deposit Ins. Corp. v. Hirsch ( In re Colonial Realty Co.),* 980 F.2d 125 (2nd Cir.1992); *In re Minh Vu Hoang,* 469 B.R. 606, 618–22 (D.Md.2012); *In re Murray,* 214 B.R. 271, 278–79 (Bankr.D.Mass.1997); *In re Saunders,* 101 B.R. 303 (Bankr.N.D.Fla.1989). *Contra, Am. Nat'l Bank v. MortgageAmerica Corp. (In re MortgageAmerica Corp.),* 714 F.2d 1266 (5th Cir.1983); *In re Swallen's, Inc.,* 205 B.R. 879, 882 (Bankr.S.D.Ohio 1997).

**\*7** That the grain proceeds did not enter the estate upon filing and were subsequently dissipated is of no consequence to a trustee's power to avoid a fraudulent transfer and obtain a recovery for the benefit of the estate and creditors. A trustee is not limited to merely recovering the property in kind that was fraudulently transferred. He is broadly empowered to recover the monetary value of the property transferred. 11 U.S.C. § 550(a). So even though the grain proceeds in question did not become property of the estate when the DEBTOR filed his chapter 7 petition, the TRUSTEE became vested with the power to avoid the prepetition fraudulent transfers and, within the confines of section 550, to recover the value of the funds fraudulently transferred to Lighthouse Farms, Midwest Farms and Power Trading from those entities, none of whom could utilize the good faith transferee defense provided in section 550(b)(1). The fact that the TRUSTEE deemed his remedies against these

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

entities to be worthless since the funds were subsequently spent and entirely dissipated should not alter the analysis or conclusion that the funds paid to SPEAKEASY were paid by Power Trading, a non-debtor entity, and were not property of the DEBTOR'S estate.

The proper remedy in this situation is the one provided by the Bankruptcy Code for avoidance of fraudulent transfers. Because section 550 limits the effectiveness of that remedy as against good faith subsequent transferees, the TRUSTEE tries to pull an end-run around those limits by reframing the issue as a property of the estate question rather than a fraudulent transfer avoidance question. This Court didn't buy that argument in *Casey's* and isn't buying it here. The TRUSTEE is unable to prove one of the fundamental elements of a cause of action under section 549, that property of the estate was transferred to SPEAKEASY.

**Power Trading had Dominion and Control**
The TRUSTEE relies heavily on the fact that the DEBTOR testified that he retained control over the funds since he controlled the three non-debtor entities. The TRUSTEE'S focus is misdirected. The proper focus is on the extent of the transferee's right and power to use the funds. This is the so-called "dominion and control" test established by the Seventh Circuit in *Bonded Financial Services, Inc., supra,* to determine whether a transfer has occurred for purposes of section 550, holding that the minimum requirement for status as a transferee is dominion over the funds such that the transferee has the right to put the money to its own purposes. 838 F.2d at 893. Mere possession of funds as a depository, an agent, an intermediary, or a trustee is not enough to make one liable as a transferee.

The TRUSTEE'S argument, that since the DEBTOR made the decisions on behalf of the separate entities, that they should thus not be treated as separately existing entities, does not hold water. Every closely held corporation or limited liability company with a sole or majority owner is necessarily controlled by that owner. While the organiza-

tion's conduct and activity is controlled by the person in charge, the conduct and activity is still that of the organization. The TRUSTEE'S argument says nothing more than that artificial entities act via real persons. The correct question is one of the entity's dominion and control. Power Trading was not a mere depository, agent, intermediary or trustee whose legal authority over the funds was limited by some agreement or statute. The TRUSTEE makes no such allegation. Power Trading's dominion and control over the funds deposited into its account was absolute and unrestricted. As a validly formed and existing limited liability company, it had the authority to own and expend the funds for its own purposes. That the DEBTOR caused the funds to be expended for his personal benefit is not material to the dominion and control inquiry, which focuses on the entity's power over the funds.FN7 Under the Seventh Circuit's dominion and control test, Power Trading is a transferee under section 550, further supporting the conclusion that the grain proceeds at issue, owned by Power Trading, were never property of the estate. It follows directly from Power Trading's status as a transferee that SPEAKEASY is a downstream transferee, not an initial transferee of the DEBTOR, and is entitled to avail itself of the good faith transferee defense of section 550(b)(1).

> FN7. In this Court's experience, it is not uncommon for funds of closely held entities to be used to pay the personal expenses of the owners, which payments are treated as income to the individual.

**Alter Ego Doctrine must be Rejected**
*8 The TRUSTEE uses the state law alter ego doctrine, a common law doctrine arising out of equity jurisprudence, to achieve a result that directly contradicts the statutory scheme adopted by Congress: the expungement of the good faith transferee defense to a downstream transferee who gave fair value in good faith and without knowledge of the voidability of the payments. No federal court has permitted the doctrine to be used for this purpose. Because it runs afoul of the plain language of

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

section 550, this Court is of the opinion that the alter ego doctrine may not be used for this purpose as a matter of federal bankruptcy law. Neither does applicable state law help the TRUSTEE. In *Casey's,* this Court determined that Indiana law governs the application of the alter ego doctrine and predicted that the Indiana Supreme Court would not countenance use of the doctrine for such a purpose, since it would not serve to remedy the fraud perpetrated by the DEBTOR against his secured creditors and it would cause an inequitable result for Casey's (and for SPEAKEASY here) as an innocent party. An equitable remedy should not be used where it would work an injustice. *Matter of Cassidy,* 892 F.2d 637, 642 (7th Cir.1990).

In reliance on the separation of the concepts of the avoidance of a transfer and the recovery of an avoided transfer, the TRUSTEE regards any consideration of the fairness of the proceeding upon SPEAKEASY as irrelevant to the application of the doctrine of alter ego in the first instance. This Court disagrees as a matter of federal bankruptcy law and state law. Before applying an equitable doctrine, courts require consideration of the result upon all affected parties. Innocent transferees like Casey's and SPEAKEASY deserve to have their statutory rights and defenses protected.

The TRUSTEE discounts any unfairness to SPEAKEASY, maintaining that the creditors of the bankruptcy estate have been harmed by the transfers.[FN8] However, it is not incumbent upon innocent downstream transferees like Casey's and SPEAKEASY to give up or be deprived of statutory defenses in order to enhance the estate. As noted by the TRUSTEE in his motion for summary judgment, this Court in *Casey's* questioned whether the estate was depleted by the DEBTOR'S transfers of the fully encumbered grain proceeds. Apparently in response to that question, along with his summary judgment motion filed on February 11, 2013, the TRUSTEE filed two releases, one by SBT and one by MICHLIG, whereby those parties purport to release (1) their security interests in the funds of the

DEBTOR, Lighthouse Farms, Midwest Farms and/or Power Trading that were paid to SPEAKEASY, and (2) any interest they have in funds recovered from SPEAKEASY.[FN9] These releases are meaningless and are properly ignored in this proceeding.

> FN8. This is not a situation where a debtor fraudulently transferred unencumbered assets to the direct detriment of his general creditors. The DEBTOR'S fraud was directed at his secured creditors. It is only because the landlord liens are statutory liens for rent avoidable under section 545(3) that the estate can claim to have been harmed at all. The Court is not, however, basing its decision on a lack of harm to the estate. In fact, the DEBTOR has been punished for committing bankruptcy fraud. His discharge has been denied, a large money judgment has been entered against him, and he has been imprisoned.

> FN9. The releases are not dated and have no apparent purpose outside of the context of this adversary proceeding. The Court presumes they were executed on or about February 11, 2013, at the request of the TRUSTEE to aid his efforts in this litigation. The record contains nothing to indicate why SBT and MICHLIG agreed to give these releases to the TRUSTEE.

As the TRUSTEE acknowledges, this Court has previously determined that SBT held a validly created and existing security interest in the grain. Although this determination has been appealed by the TRUSTEE, it is the law of the case for the purpose of this Opinion. When the DEBTOR sold the grain for cash, the liens of the landlords, SBT and MICHLIG, attached to the cash proceeds. *See* 810 ILCS 5/9–315(a)(2). When those proceeds were transferred to and among Lighthouse Farms, Midwest Farms and Power Trading, the funds remained encumbered by those liens. *See* 810 ILCS 5/9–332. When the case was filed, the funds held in Power Trading's account were subject to the same liens.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

**\*9** When Power Trading transferred the funds in its accounts to various good faith transferees such as SPEAKEASY and Casey's, at that point and only at that point would the liens against the proceeds have been lost. *See* 810 ILCS 5/9–332. By purporting to now "release" their liens in the funds paid to SPEAKEASY, SBT and MICHLIG signed off on a paper tiger. Their liens were lost shortly after the petition was filed when the DEBTOR defrauded them by spending their collateral at SPEAKEASY'S establishment. Moreover, a lien on cash proceeds continues to exist only so long as the proceeds are identifiable. *See* 810 ILCS 5/9–315(b)(2). Not even the TRUSTEE claims that SPEAKEASY continues to hold identifiable proceeds.

As for the purported "release" of their interest in any funds recovered by the TRUSTEE from SPEAKEASY, it is axiomatic that a prepetition security interest does not encompass a trustee's avoiding powers or proceeds recovered therefrom.[FN10] *See* 11 U.S.C. § 552(a); *In re TekAids Industries, Inc.,* 145 B.R. 253, 256–57 (Bankr.N.D.Ill.1992). So that portion of the release is equally dumbfounding. From the Court's perspective, the TRUSTEE'S theories asserted in this case are an ill-conceived attempt to engineer a result that the facts don't support. The meaningless releases appear to be one last half-court heave in that effort. The belated gifting of a purported benefit to the estate, at no cost to the secured party, rendered at the expense of an unsuspecting third party, is a transparent ruse that does not achieve the effect aimed for by the TRUSTEE.[FN11]

> FN10. It follows that a trustee will not attempt to avoid a transfer of a fully encumbered asset. *See In re Teleservices Group, Inc.,* 469 B.R. 713, 763 n. 157 (Bankr.W.D.Mich.2012).

> FN11. None of the cases cited by the TRUSTEE affect this determination. For example, in *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.,* 275

B.R. 737 (D.Md.2001), the court allowed the chapter 11 trustee to recover legal fees which were paid by various alter ego entities, as postpetition transfers, noting that the defendant law firm represented the debtor in the creation of the entities making the transfers. The court did not discuss section 550 and unlike SPEAKEASY, the defendant was closely associated with the debtor.

**CONCLUSION**

The grain proceeds paid to SPEAKEASY were transferred before bankruptcy to and among three non-debtor entities, lawfully organized and validly existing under state law, and were ultimately deposited in a bank account in the name of one of those entities, Power Trading. The deposited funds were under the dominion and control of Power Trading, a transferee under section 550. Power Trading, not the DEBTOR, held legal title to the deposited funds when the DEBTOR filed his bankruptcy petition. Assuming that the prepetition transfers are avoidable under section 548, fraudulently transferred property is not property of the estate until and unless recovered, and the TRUSTEE cannot claim an equitable title interest. So the TRUSTEE cannot prove the necessary element for a section 549 claim, that the property transferred was property of the estate.

As defined in section 550, SPEAKEASY is not an initial transferee from the DEBTOR. Instead, SPEAKEASY is a mediate transferee eligible for the good faith transferee defense of section 550(b)(1), the elements of which the TRUSTEE does not contest. Thus, even if the postpetition payments made to SPEAKEASY would otherwise be avoidable under section 549, SPEAKEASY is not liable to return the funds or their value by operation of section 550(b)(1).

The TRUSTEE'S reliance on the alter ego doctrine to readjust the property of the estate analysis, and to eliminate the good faith transferee defense, is misguided. Principles of federal and state law

Slip Copy, 2013 WL 1397456 (Bkrtcy.C.D.Ill.)
**(Cite as: 2013 WL 1397456 (Bkrtcy.C.D.Ill.))**

prohibit the use of the alter ego doctrine for that purpose. Summary judgment will be awarded in favor of SPEAKEASY.

**\*10** This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

Bkrtcy.C.D.Ill.,2013.
In re Duckworth
Slip Copy, 2013 WL 1397456 (Bkrtcy.C.D.Ill.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.