# Attachment B

*In re First Independence Capital Corp.*


Page 1

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

▷
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Sixth Circuit Rule 28. (Find CTA6 Rule 28)

United States Court of Appeals,
Sixth Circuit.
In re: FIRST INDEPENDENCE CAPITAL CORPORATION, Debtor.
First Independence Capital Corporation, Plaintiff-Appellant,
v.
Merrill Lynch Business Financial Services Incorporated; Merrill, Lynch, Pierce, Fenner and Smith, Incorporated, Defendants-Appellees.

No. 05-1618.
May 16, 2006.

**Background:** Debtor-in-possession under Chapter 11 of the Bankruptcy Code brought action against bank, seeking to recover for various allegedly fraudulent transfers. After a trial, the Bankruptcy Court entered judgment in favor of bank, and the United States District Court for the Eastern District of Michigan affirmed. Debtor appealed.

**Holdings:** The Court of Appeals, Cook, Circuit Judge, held that:
(1) Uniform Commercial Code (UCC) sections which defined who may qualify as a holder in due course did not provide rescission cause of action;
(2) bank acted in good faith, for purposes of Bankruptcy Code section enabling recovery of avoidable transfers from initial transferees; and
(3) bank did not possess knowledge of voidability of allegedly fraudulent transfers, as required for recovery of avoidable transfers.

Affirmed.

West Headnotes

**[1] Bankruptcy 51 🗝2703**

51 Bankruptcy
   51V The Estate
      51V(H) Avoidance Rights
         51V(H)1 In General
            51k2702 Rights of Debtor or Injured Creditors
               51k2703 k. Debtor in Possession. Most Cited Cases

**Bills and Notes 56 🗝327**

56 Bills and Notes
   56VIII Rights and Liabilities on Indorsement or Transfer
      56VIII(D) Holders in Due Course
         56k327 k. Nature and Grounds of Protection. Most Cited Cases

Uniform Commercial Code (UCC) sections, as adopted under Michigan law, which defined who may qualify as a holder in due course, did not provide rescission cause of action on behalf of debtor-in-possession under Chapter 11 of the Bankruptcy Code, in action against bank seeking to recover for various allegedly fraudulent transfers; rather, UCC sections at issue served only to invalidate a potential holder-in-due-course defense. M.C.L.A. §§ 440.3306, 440.3307.

**[2] Bankruptcy 51 🗝2701**

51 Bankruptcy
   51V The Estate
      51V(H) Avoidance Rights
         51V(H)1 In General
            51k2701 k. Avoidance Rights and Limits Thereon, in General. Most Cited Cases

Bank, which allegedly deposited debtor's funds into personal brokerage account of debtor's principals, acted in good faith, for purposes of Bankruptcy Code section enabling recovery of avoidable transfers from initial transferees, although bank al-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

legedly accepted the checks in violation of its own policy, and knew that principals used corporate checks to fund their personal margin trading, where there was no proof that bank had actual knowledge of the transfers' voidability, or that it acted with anything other than proper intentions. 11 U.S.C.A. § 550(b)(1).

**[3] Bankruptcy 51 €⇒2701**

51 Bankruptcy
   51V The Estate
      51V(H) Avoidance Rights
         51V(H)1 In General
            51k2701 k. Avoidance Rights and Limits Thereon, in General. Most Cited Cases

Bank, which allegedly deposited debtor's funds into personal brokerage account of debtor's principals, did not possess requisite knowledge of voidability of allegedly fraudulent transfers, for purposes of Bankruptcy Code section enabling recovery of avoidable transfers from initial transferees, where nothing would have alerted a reasonable person to the transfers' recoverability. 11 U.S.C.A. § 550(b)(1).

**\*525** On Appeal from the United States District Court for the Eastern District of Michigan.John D. Hertzberg, Bingham Farms, MI, Ralph R. Safford, Mary Ann Hart, Safford & Baker, Bloomfield Hills, MI, for Plaintiff-Appellant.

Donald J. Hutchinson, Miller, Canfield, Paddock & Stone, Detroit, MI, for Defendants-Appellees.

Before: GIBBONS and COOK, Circuit Judges; SCHWARZER, Senior District Judge.[FN*]

    FN* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

COOK, Circuit Judge.

**\*\*1** Plaintiff First Independence Capital Corporation, having declared bankruptcy, seeks to recover under the Bankruptcy Code and Michigan law for various fraudulent transfers. After a trial, the bankruptcy court held that Merrill Lynch, a subsequent transferee, took the transfers for value, in good faith, and without knowledge of the transfers' voidability, precluding First Independence's recovery under the Bankruptcy Code. The bankruptcy court also held that the state law provisions on which First Independence relied did not create a cause of action. The district court affirmed, and First Independence appeals. Because the bankruptcy court did not clearly err in concluding that Merrill Lynch acted in good faith and without knowledge of the transfers' voidability, and because the other arguments advanced by First Independence are without merit, we affirm.

**\*526** I

First Independence, a Michigan corporation, is currently a debtor-in-possession under Chapter 11 of the Bankruptcy Code. Michael and Sandra Baumhaft owned and operated First Independence before the bankruptcy. Michael acted as the corporation's president and sat on the board of directors. Sandra served as First Independence's only other director and was also the vice-president and sole shareholder.

The Baumhafts opened a personal brokerage account with Defendant Merrill, Lynch, Pierce, Fenner & Smith. Shortly after this, First Independence, through the Baumhafts, opened a Working Capital Management Account with Defendant Merrill Lynch Business Financial Services.[FN1] The Working Capital Management Account provided a line of credit to First Independence, and the Baumhafts personally guaranteed the credit line, offering the assets of a separate account (a sub-account of their personal brokerage account) as collateral.

    FN1. We refer to the defendants collectively as "Merrill Lynch" throughout this opinion.

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

First Independence then made nine transfers to the Baumhafts, six of which relate to this appeal. In all six cases, the Baumhafts presented checks to Merrill Lynch, requesting that the funds be deposited in their personal brokerage account. In three of the transfers, the Baumhafts presented First Independence checks drawn from its line of credit and payable to "Merrill Lynch." In two of the transfers, the Baumhafts presented checks drawn from First Independence's accounts at third-party banks, made payable to "Merrill Lynch." And in one transfer, the Baumhafts presented a third-party check, payable to the order of First Independence and endorsed to "Merrill Lynch" by Michael Baumhaft on behalf of First Independence. In all six instances, Merrill Lynch deposited the funds in the Baumhafts' brokerage account.

When First Independence declared bankruptcy, it sought to rescind or avoid these transfers under the Bankruptcy Code and state law. The bankruptcy court determined each of the transfers from First Independence to the Baumhafts to be fraudulent (and, consequently, avoidable) but concluded that First Independence could not recover from Merrill Lynch because Merrill Lynch, a subsequent transferee, took the transfers in good faith, for value, and without knowledge of their avoidability. The court also determined that the Michigan commercial code provisions on which First Independence relied did not create a cause of action to rescind the transfers. The district court affirmed in all respects, and First Independence appeals.

II

**\*\*2** We review the bankruptcy court's decision rather than the district court's decision. *In re Am. HomePatient, Inc.,* 414 F.3d 614, 617 (6th Cir.2005). We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Id.*

A. Claims Under Michigan's Commercial Code
Michigan has adopted Article 3 of the Uniform Commercial Code. Michigan Compiled Laws § 440.3202 permits a party, "[t]o the extent permitted by other law," to rescind negotiation of an instrument, except "against a subsequent holder in due course or a person paying the instrument in good faith and without knowledge of facts that are a basis for rescission." Sections 440.3302, 440.3306, and 440.3307 define who may qualify as a holder **\*527** in due course. First Independence maintains that Michigan Compiled Laws § 440.3307(2), working with the other sections, precludes Merrill Lynch from asserting a holder-in-due-course defense to First Independence's claims. First Independence also argues that, contrary to the bankruptcy court's conclusion, these sections create an independent cause of action for rescission, the elements of which mirror a common-law claim for rescission.

Section 440.3307(2) provides:

If (i) an instrument is taken from a fiduciary for payment or collection or for value, (ii) the taker has knowledge of the fiduciary status of the fiduciary, and (iii) the represented person makes a claim to the instrument or its proceeds on the basis that the transaction of the fiduciary is a breach of fiduciary duty, the following rules apply:

(a) Notice of breach of fiduciary duty by the fiduciary is notice of the claim of the represented person.

\* \* \* \*

(d) If an instrument is issued by the represented person or the fiduciary as such, to the taker as payee, the taker has notice of the breach of fiduciary duty if the instrument is ... (iii) deposited to an account other than an account of the fiduciary, as such, or an account of the represented person.

We assume without deciding that First Independence is correct that Merrill Lynch was a taker of the instruments in this case and that Merrill Lynch cannot claim the status of holder in due course. This would deprive Merrill Lynch of a de-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

fense to First Independence's claim for rescission, but First Independence's claim can survive only "[t]o the extent [it is] permitted by other law." Mich. Comp. L. § 440.3202; *see also id.* at cmt. 3 ("Section 3-202 gives no right that would not otherwise exist. The section is intended to mean that any remedies afforded by other law are cut off only by a holder in due course."). In other words, unless First Independence has a valid claim for rescission under "other law," Merrill Lynch lacks a need for the holder-in-due-course defense.

[1] First Independence argues that §§ 440.3306 and 440.3307 provide the rescission cause of action that it seeks. We disagree. These sections serve only to invalidate a potential *defense. See Conder v. Union Planters Bank, N.A.,* 384 F.3d 397, 401-02 (7th Cir.2004) ("[A]ll that section 3-306 does is, by lifting the holder in due course defense, to open the way to a tort suit. It removes a defense, rather than altering the claim...."); *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank,* 265 F.3d 601, 621 (7th Cir.2001); *Beldance v. Huntington Nat'l Bank (In re World Metals, Inc.),* 313 B.R. 720, 729 (Bankr.N.D.Ohio 2004) ("[T]he Court finds that [Ohio's version of U.C.C. § 3-306] does not provide an independent cause of action."); *Chouteau Auto Mart, Inc. v. First Bank of Missouri,* 148 S.W.3d 17, 22 (Mo.Ct.App.2004) ("Even when read together, the two sections contain no direct language imposing a liability, nor do they purport to set forth all the elements of a claim against the Bank."). The Bankruptcy court did not err in rejecting this claim for rescission.

B. Claims Under the Bankruptcy Code

**\*3** [2] The bankruptcy court concluded that First Independence (as a debtor-in-possession) could avoid the transfers to the Baumhafts under 11 U.S.C. § 548, but the court also found Merrill Lynch to be a subsequent transferee of the funds-a conclusion First Independence does not contest. As a subsequent transferee, Merrill Lynch could defeat First Independence's claim to recover the transfers if Merrill Lynch took the transfers for value, in good faith, and without knowledge of the voidability**\*528** of the earlier transfers. *See* 11 U.S.C. § 550(b)(1). The court held that Merrill Lynch fulfilled all three requirements, and First Independence takes issue with the court's holding.

*1. GOOD FAITH*

First Independence insists the bankruptcy court erred when it concluded, "For purposes of § 550(b), good faith simply requires that the transaction not be a 'wash.' " The bankruptcy court cited *Eder v. Queen City Grain, Inc. (In re Queen City Grain, Inc.),* 51 B.R. 722, 727 (Bankr.S.D.Ohio 1985), for this proposition, and that case in turn quoted H.R.Rep. No. 95-595, at 376 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6332, which states:

> The phrase 'good faith' in this paragraph is intended to prevent a transferee from whom the trustee could recover from transferring [sic] the recoverable property to an innocent transferee, and receiving a retransfer from him, that is, 'washing' the transaction through an innocent third party. In order for the transferee to be excepted from liability under this paragraph, he himself must be a good faith transferee.

Courts and commentators have struggled to define the term "good faith" as used in § 550(b). Some have concluded that the term is synonymous with "without knowledge of the voidability," so that the Code's use of both creates a redundancy. *See Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 897 (7th Cir.1988). First Independence points to *IRS v. Nordic Village, Inc. (In re Nordic Village),* 915 F.2d 1049, 1056 (6th Cir.1990), *rev'd on other grounds,* 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992), which indicated that "good faith" involved a lack of "actual notice" of voidability. *Id.*

Even if "good faith" under § 550(b) means a lack of actual notice or, as First Independence also contends, a lack of illicit intent, we discern no error in the bankruptcy court's conclusion that Merrill Lynch acted in good faith. First Independence ar-

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

gues that Merrill Lynch accepted the checks in violation of its own policy, and that Merrill Lynch's account manager knew that the Baumhafts used corporate checks to fund their personal margin trading. But these facts neither prove that Merrill Lynch possessed actual knowledge of the transfers' voidability nor show that it acted with anything other than proper intentions. The court found that Merrill Lynch did not have actual notice of the voidability of the transfers or of the Baumhafts' alleged misappropriation of the funds, and it found that the case did not involve "egregious, vindictive or intentional misconduct." First Independence suggests no reason for us to discard these findings as clearly erroneous.

### 2. KNOWLEDGE OF VOIDABILITY

**\*\*4** [3] First Independence next argues that it should recover the transfers because Merrill Lynch possessed the requisite knowledge of the transfers' voidability. First Independence does not suggest that at the time Merrill Lynch accepted the transfers it knew the precise bases of voidability, but argues instead that Merrill Lynch should have questioned the propriety of the transfers. It first points to *Allis Chalmers Leasing Servs. Corp. v. Byron Center State Bank,* 129 Mich.App. 602, 341 N.W.2d 837, 840 (1983), which held that "a payee bank is put on a duty of inquiry where a check, drawn payable to the order of the bank, is presented by a third party seeking to negotiate the check for his own benefit." FN2 First Independence also points **\*529** to Mich. Comp. L. § 440.3307 (describing, as explained above, when a taker has notice of a potential claim of breach of fiduciary duty in order to preclude holder-in-due-course status under the commercial code) and to Merrill Lynch's policy on "Corporate and Partnership Checks," which provides that corporate checks drawn on a Working Capital Management Account presented for deposit in an individual account should be "accompanied by written instructions signed by an appropriate officer of the corporation." Finally, First Independence points us to Merrill Lynch's account manager Alan Sasson's testimony as establishing that Merrill Lynch knew of the illegitimacy of the transfers.

> FN2. To the extent that First Independence seeks to maintain a claim under *Allis Chalmers,* we note that *Allis Chalmers* involved an ordinary negligence action for a bank's breach of its duty of inquiry. *See Allis Chalmers,* 341 N.W.2d at 839. As in any negligence case, First Independence bears the burden of proving causation, an element that the bankruptcy court concluded First Independence had not shown because any inquiry by Merrill Lynch would have been directed to the Baumhafts. *See Travelers Cas. & Surety Co. of Am. v. Wells Fargo Bank,* 374 F.3d 521, 524 (7th Cir.2004) ("[E]ven if Travelers proved that Schwab had violated its duty [to inquire whether the check was authorized], in order to obtain relief Travelers would have to show that Schwab, had it fulfilled its duty, would have discovered that [the corporation] had not authorized the check ..., and having discovered this would not have let [the depositor] transfer the money out of his Schwab account.").

a. Merrill Lynch's Notice

First Independence contends that *Allis Chalmers* and Mich. Comp. L. § 440.3307, as well as Merrill Lynch's own check-acceptance policy, placed Merrill Lynch on notice of the transfers' illegitimacy. According to First Independence, our decision in *Nordic Village* renders such notice sufficient to constitute "knowledge" for the purposes of § 550(b).

In *Nordic Village,* an employee of the bankrupt company (Swiss Haus) drew a corporate check payable to a bank, which then issued a cashier's check with the notation "REMITTER: SWISS HAUS, INC." 915 F.2d at 1050. The employee submitted the cashier's check to the IRS with his income tax with instructions to credit the check toward his tax liability, and the IRS complied. *Id.* at 1050-51. The court held that "[t]he requirement of 'knowledge' is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

satisfied if the transferee 'knew facts that would lead a reasonable person to believe that the property transferred was recoverable.' " *Id.* at 1055 (citation omitted); *see Wasserman v. Bressman (In re Bressman),* 327 F.3d 229, 236 (3d Cir.2003) (citing *Nordic Village*); *Brown v. Third Nat'l Bank (In re Sherman),* 67 F.3d 1348, 1357 (8th Cir.1995) (same). In finding that the IRS had knowledge of the transfer's voidability, the court determined that the notation on the cashier's check would lead a reasonable person to conclude that the property transferred was recoverable. *Nordic Vill.,* 915 F.2d at 1056.

Certainly "some facts suggest ... other facts," and "[i]f a transferee possesses knowledge of facts that suggest a transfer may be fraudulent, and further inquiry by the transferee would reveal facts sufficient to alert him that the property is recoverable, he cannot sit on his heels, thereby preventing a finding that he has knowledge." *In re Sherman,* 67 F.3d at 1357. But here the facts surrounding the Baumhafts' deposits would not lead a reasonable person to believe that the transfers were voidable, even though the Baumhafts' use of corporate checks may have placed Merrill Lynch on implied notice of the transfers' illegitimacy under Michigan law. As the bankruptcy court stated, "[t]here was a range of legitimate scenarios under which the Baumhafts were entitled to funds from [First Independence] for their own personal use, including his salary, repayment of the officer loan debt and distribution to Sandra Baumhaft as sole shareholder." FN3 Also, as the bankruptcy court **530** noted, "[t]here was no one other than the Baumhafts themselves to ask whether these funds were paid for a legitimate purpose." Any inquiry into the legitimacy of the transfer would have been obviously circular in this case because the party seeking to use the funds for his own benefit was also the only party to whom the bank could make inquiry. *See Bonded Fin.,* 838 F.2d at 898 ("Had the Bank ... inquire[d] about the check, the Bank would have learned that the instrument was authorized by the appropriate corporate officials. Since the inquiry would have turned up nothing pertinent to voidability, the Bank's failure to make it does not permit a court to attribute to it the necessary knowledge [under § 550(b) ]."). On these facts, we see nothing that would alert a reasonable person to the transfers' recoverability. *See Nordic Vill.,* 915 F.2d at 1055.

> FN3. Generally, of course, the corporate check would be made out to the individual, who may then deposit it. But Merrill Lynch's failure to require that here-where the corporation's sole signatory authority was also the individual presenting the check, and the deposit was into an account jointly owned by the corporation's only two officers and directors-does not demonstrate its "knowledge of the voidability of the transfer avoided."

b. Sasson's Testimony

**\*\*5** Alan Sasson's testimony belies First Independence's assertion that Merrill Lynch knew of the transfers' voidability. The testimony confirms that Sasson knew the Baumhafts deposited funds from First Independence's accounts, but the same testimony also demonstrates his ignorance of any impropriety. He testified that he considered First Independence's funds and the Baumhafts' funds to be essentially one and the same; he thus did not look askance at their transferring funds between the business and personal accounts.

In this case, Merrill Lynch and its agents did not know "facts that would lead a reasonable person to believe that the property transferred was recoverable," *Nordic Vill.,* 915 F.2d at 1055 (quotation omitted), and any inquiry that it conducted into whether First Independence actually authorized the transfers would have been patently futile. The bankruptcy court did not clearly err in concluding that Merrill Lynch acted without knowledge of the transfers' voidability.

C. Claims Under Michigan's Fraudulent Transfer Act

Section 544 of the Bankruptcy code permits a debtor-in-possession to step into the shoes of cer-

181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)))**

tain creditors in order to avoid transfers that creditors could avoid under laws outside of the Bankruptcy Code. *See* 11 U.S.C. § 544. The bankruptcy court concluded that First Independence's transfers to the Baumhafts were fraudulent under Michigan's version of the Uniform Fraudulent Transfer Act, *see* Mich. Comp. L. § 566.34, and found that First Independence, as the debtor-in-possession, could avoid the transfers under § 544 of the Bankruptcy Code. But even though voidability under § 544 may be premised on state law, recovery of transfers avoided under this section, like recovery of transfers avoided under § 548, hinges on § 550 of the Bankruptcy Code rather than on state law. *See* 11 U.S.C. § 550(a). Thus the bankruptcy court's findings that Merrill Lynch took the transfers in good faith, for value, and without knowledge of voidability bar recovery for the transfers avoided under § 544. Because First Independence invoked § 544 of the Bankruptcy Code in seeking to avoid the transfers under Michigan's Fraudulent Transfer Act and because § 550 of the Bankruptcy Code governs recovery of those avoided transfers, we find irrelevant First Independence's arguments regarding its ability to recover under Michigan's Fraudulent Transfer Act.

### *531 III

Because the bankruptcy court did not clearly err in determining that Merrill Lynch took the transfers for value, in good faith, and without knowledge of their voidability, and because First Independence asserts no valid basis for rescission, we affirm the judgment of the district court.

C.A.6 (Mich.),2006.
In re First Independence Capital Corp.
181 Fed.Appx. 524, 2006 WL 1342789 (C.A.6 (Mich.)), 2006 Fed.App. 0348N

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.